**SULLIVAN PC**
7 East 20th Street
New York, New York 10003
(212) 687-5900
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
CARLOS RIOS,

         Plaintiff,    **Docket No.: 16-cv-7516**

    -against-        **JURY TRIAL DEMANDED**

CONSTRUCTION & GENERAL BUILDING
LABORERS LOCAL 79, JUAN CARLOS
RODRIGUEZ, and JOSEPH CESTARO,

         Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

   Plaintiff Carlos Rios ("Rios"), by and through his attorneys, Sullivan PC, as and

for his Complaint against Defendants Construction & General Building Laborers Local

79 ("Local 79"), Juan Carlos Rodriguez ("Juan Carlos"), and Joseph Cestaro ("Cestaro")

(Local 79, Juan Carlos, and Cestaro collectively referred to herein as "Defendants"),

alleges as follows:

**PRELIMINARY STATEMENT**

   1.   This is an action for damages and injunctive and other relief pursuant to

the Labor Management Relations Act, 29 U.S.C. §185 ("LMRA"), the Labor-

Management Reporting and Disclosure Act, 29 U.S.C. §411 ("LMRDA"), Title VII of

the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.* ("Title VII"), New

York Executive Law § 296 ("New York Human Rights Law"), New York City

1

Administrative Code §8-107 ("New York City Human Rights Law"), and the common law of the State of New York for breach of duty of representation, violation of an employee's freedom of speech and right to testify, discrimination based on race and national origin, and intentional infliction of emotional distress.

2.      Rios, a member in good standing of Local 79 since 2008, was repeatedly pressured and threatened by Defendants to lobby on behalf of Local 79 in an upcoming union election.  Rios refused, and later testified in the matter before the National Labor Relations Board ("NLRB")[1].  In response, Defendants unjustly and in bad faith terminated Rios's employment in violation of Local 79's collective bargaining agreement, threatened him, and terminated his union membership in violation of Local 79's constitution on the basis of his national origin.

## PARTIES, JURISDICTION, AND VENUE

3.      At all relevant times herein, Plaintiff Rios was and is a resident of the State of New York, Kings County.

4.      At all relevant times herein, Defendant Local 79 was and is a labor organization within the definition of 29 U.S.C. § 152(5) and Section 701(e) of Title VII, with its principal place of business located at 520 Eighth Avenue, New York, New York.

5.      Upon information and belief, at all relevant times herein Defendant Juan Carlos was and is a resident of the State of New Jersey, Hudson County.

6.      Upon information and belief, at all relevant times herein, Defendant Cestaro was and is a resident of the State of New York, Nassau County.

7.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this matter arises under LMRA, LMRDA, and Title VII.  This court has

---

[1] In re World Class Demolition Corp., NLRB Case No. 29-RC-172427 ("NLRB Case").

jurisdiction over Rios's state law claims pursuant to 28 U.S.C. § 1367(a), as they arise under the same operative set of facts and form part of the same case or controversy.

8.     This court has personal jurisdiction over Local 79 pursuant to 29 U.S.C. §§ 185(c) and 412, as it has its principal place of business within the State of New York.

9.     This Court has personal jurisdiction over Juan Carlos as he maintains substantial contacts with the State of New York.

10.     This Court has personal jurisdiction over Cestaro as he is a citizen and resident of the State of New York.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## JURY DEMAND

12.     Rios demands a trial by jury of all issues so triable in this action.

## FACTS

13.     Rios is of Hispanic descent and Guatemalan origin.

14.     Local 79 is a labor union affiliated with the Mason Tenders' District Council and Laborers' International Union of North America.  Local 79 represents approximately 9,000 laborers working in construction and related industries in New York, New Jersey, and surrounding areas.

15.     Local 79's constitution provides that "all persons having lawfully acquired membership" in Local 79 are entitled to, *inter alia*, the right to continue membership, and the right to be free from discrimination based upon race or national origin.

16.     Rios lawfully acquired membership in Local 79 in approximately 2008, and has been a member in good standing since then.  On one or more occasions during this time Rios has fallen behind on his dues, but on each such occasion Rios simply paid

the late dues and his membership continued without incident.  At all relevant times herein this was and is the policy and standard practice of Local 79, as evidenced by the experience of numerous other members of Local 79 known to Rios, and as formally codified in Article III, Section 2(e) of Local 79's constitution.

17.     Since 2008, Rios has worked for World Class Demolition Corp. ("World Class") as a construction laborer and (later) foreman.  World Class's employees are not unionized.

18.     In addition to his work with World Class, Rios works intermittently as a laborer and/or foreman for union contractors. This is the standard practice of members of Local 79 – in both union and non-union demolition companies, work is typically project-by-project and often irregular, and members work where they can find work.  Rios has a long history of working for a specific union company, Elite Demolition Contracting Corp. ("Elite").  Elite's employees are unionized, with Local 79 as their designated bargaining representative.

19.     Rios's work for Elite is subject to Local 79 and Elite's collective bargaining agreement ("CBA").  Pursuant to the CBA, before any employee is discharged from Elite for failing to pay dues to Local 79, both Elite and the employee are required to receive written notice signed by Local 79's Secretary Treasurer noting the employee's failure to pay such dues, and Elite is to provide such employee seven days to get current.

20.     In or around March 2016, Local 79 petitioned the NLRB to hold a union election ("Election") pursuant to the NLRB's rules and procedures to determine whether Local 79 would become the bargaining representative for World Class's employees.

21.     Before and during the pendency of the Election, Juan Carlos, an official of

4

Local 79, repeatedly went to job sites to try to meet with Rios.  Juan Carlos believed that Rios, as a foreman, possessed influence with World Class's workers, and wanted Rios to speak to them in favor of voting for the union.  On these occasions, Rios told Juan Carlos that he could not do as Juan Carlos asked because he felt ethically conflicted, as he was a loyal union member and a loyal employee of World Class.  Rios repeatedly told Juan Carlos that the workers should decide for themselves.

22.     Over time, Juan Carlos became more and more aggressive towards Rios. Rios became concerned about the repeated confrontations and asked the security at the project site where he worked to keep Juan Carlos away from him.  Despite Rios' request to security, Juan Carlos approached him on another job site again, and again demanded that Rios lobby on behalf of Local 79.  When Rios again refused, Juan Carlos attempted to threaten Rios into complying.  Specifically, Juan Carlos told Rios that he had been told by another worker that Rios had violated a union rule, and that if Rios did not help Local 79 win the Election, he would be thrown out of Local 79.

23.     Rios immediately challenged Juan Carlos, telling him that this alleged violation was a lie, and that if Juan Carlos thought otherwise he should bring a charge and Rios would defend himself in accordance with the union's procedures.  After Rios challenged Juan Carlos' lie, Juan Carlos never brought the lie up again.

24.     The Election was subsequently held on April 29, 2016, with World Class's employees voting 38-21 against being represented by Local 79.

25.     Shortly thereafter, Local 79 brought the NLRB Case to challenge the results of the Election, alleging *inter alia* that World Class had given out improper raises during the pendency of the Election.  On May 23, 2016, Rios testified in the NLRB Case,

5

stating *inter alia* that the raises had been given out pursuant to World Class's established business practices.  Juan Carlos attended the hearings in the NLRB Case, and watched Rios testify.

26.     Later that week, while working for Elite, Rios witnessed Juan Carlos come on to the site and speak with Luis, his foreman.  Luis subsequently told Rios that Juan Carlos had told him not to let Rios work, and to send Rios home.  In the course of their discussion, Rios told Luis that he might be behind on his dues, and that he would go to Local 79's offices and make sure his dues were up to date.

27.     Local 79 did not send any written notification to Elite regarding Rios's dues prior to demanding that Elite terminate Rios.

28.     On or around the following Monday, May 30, Rios went to Local 79's office to ensure his dues were fully paid.  There he spoke to a receptionist, who told him that he was behind on his union dues.  Rios told the receptionist that he brought money and was prepared to pay his dues.  The receptionist directed him to wait in line for a different window at which to pay.

29.     As he waited on line to pay his dues, Juan Carlos coincidentally walked in, saw Rios, and again confronted him.  Juan Carlos angrily asked what Rios was doing at Local 79's office.  Juan Carlos accused Rios of not supporting the union in the NLRB Case. Rios protested that he had only testified truthfully.  During this confrontation, Juan Carlos screamed at Rios.

30.     Juan Carlos then instructed Rios to follow him into an isolated side office. There, Juan Carlos screamed even louder and acted in a physically threatening manner. Juan Carlos accused Rios of lying in the NLRB Case. Juan Carlos interrogated Rios

about his testimony.  Juan Carlos again demanded that Rios speak to World Class's
employees in favor of Local 79.  Rios refused for the same reasons as on the prior
occasions.

31.     After Rios again refused to do as demanded by Juan Carlos, Juan Carlos
told Rios, "I want you to make just one mistake, so I can throw you out of the union.  I
don't want people like you in the union."  Then Juan Carlos left, leaving Rios alone.

32.     Shaken by his confrontation with Juan Carlos, Rios returned to the line in
the reception area to wait to pay his dues.  When he reached the transaction window, the
staff person asked for his passport and social security card.  As Rios was supplying this
information, Juan Carlos re-entered the area, and overheard that Rios was paying his
dues.  Juan Carlos immediately turned and went back into the main offices.

33.     Shortly thereafter, Cestaro, another Local 79 official, emerged from the
main offices into the reception area and angrily shouted "Who is Carlos Rios?"  Rios
indicated who he was, and Cestaro went to the staff person with whom Rios had been
working and demanded Rios's social security card.  Cestaro held the card up before the
numerous other workers in the reception area and loudly declared, "This card is fake!"
He then disappeared back into the main offices with Rios's card.

34.     For approximately 25 minutes Rios sat in Local 79's office, terrified that
the union was calling the police or that he was otherwise about to get into trouble.
Finally, the staff person called Rios back over and told him that he was no longer a
member of the union.  She told him to go to the Social Security Administration and bring
back a letter verifying the authenticity of his social security card.  Rios took his card and
passport and hurriedly left Local 79's offices.

35.     Between the confrontations with Juan Carlos and Cestaro and the challenge to his social security card, Rios was terrified.  He was so worried that Local 79 had called the police to arrest him that he tore his social security card into pieces and threw them away.  While there ultimately were no police waiting for him outside, Rios was severely upset and distraught for several days after the incident.

36.     Rios has not pursued internal remedies within Local 79 for redress of his damages because he reasonably believes such action would be futile.  Because he was thrown out of the union, he is not currently a member in good standing, and as such does not have a right to Local 79's grievance procedure under its rules and procedures.  Furthermore, as he has been discriminated against, threatened, and denied his membership in the union by prominent union officials and representatives, Rios reasonably believes that Local 79 would take no action on any internal proceeding he brought, and may take further action against him.

## FIRST CAUSE OF ACTION
### (LMRA against Local 79)

37.     Rios repeats and re-alleges each and every previous allegation as if fully set forth herein.

38.     Rios is an employee as defined in 29 U.S.C. § 152(3).

39.     Local 79 is a labor organization as defined in 29 U.S.C. § 152(5).

40.     Local 79 is the designated bargaining representative of the employees of Elite, which operates in an industry affecting commerce as defined in 29 U.S.C. § 142(1).

41.     Local 79 had a duty under the CBA to fairly represent the interests of Rios and other employees in good faith.

42.     Local 79 breached its duty to Rios in multiple respects, including without

8

limitation failing to notify Rios and Elite in writing of his unpaid dues prior to demanding his termination, failing to allow Rios to be readmitted into the union, and discriminatorily challenging Rios's immigration documentation.

43.     These breaches by Local 79 are the direct result of bad-faith and dishonest conduct on the part of Local 79 officials, representatives, and agents.

44.     Because of Local 79's failure to fairly represent Rios, he was terminated from employment by Elite without just cause in violation of the CBA, and has been and will continue to be denied future employment opportunities with Elite and other employers.

45.     As a direct and proximate result of Local 79's actions, Rios suffered and continues to suffer actual damages to be determined at trial, in forms including without limitation loss of past and future income, mental anguish, and pain and suffering.

## SECOND CAUSE OF ACTION
### (LMRDA against Local 79)

46.     Rios repeats and re-alleges each and every previous allegation as if fully set forth herein.

47.     Local 79 is a labor organization as defined in 29 U.S.C. § 152(5).

48.     Pursuant to Subsection (2) of the LMRDA, every member of a labor organization has the right to meet and assemble freely with other members, to express any views, arguments, or opinions, and to express his views in a labor election.

49.     Pursuant to Subsection (4) of the LMRDA, no labor organization shall limit the right of any member to appear as a witness in any judicial, administrative, or legislative proceeding.

50.     While Rios was a member of Local 79, Local 79 sought to limit and/or

control Rios's right to meet and share his opinion as to the Election with other actual and prospective members of the union.

51.     While Rios was a member of Local 79, Local 79 sought to limit Rios's appearance as a witness in the NLRB Case.

52.     Because of Rios's testimony against Local 79 and refusal to speak on their behalf in connection with the Election, Local 79 took several repudiative measures against Rios, including terminating his employment at Elite, denying his readmittance to the union, and discriminatorily challenging his documentation and immigration status.

53.     As a direct and proximate result of Local 79's actions, Rios suffered and continues to suffer actual damages to be determined at trial, in forms including without limitation loss of past and future income, mental anguish, and pain and suffering.

### THIRD CAUSE OF ACTION
### (Title VII against Local 79)

54.     Rios repeats and re-alleges each and every previous allegation as if fully set forth herein.

55.     Local 79 is a labor organization as defined in Section 701(d) of Title VII.

56.     Local 79 is engaged in an industry affecting commerce pursuant to Section 701(e) of Title VII, in that Local 79 has fifteen or more members and is the certified or acting representative of employees of one or more employers in an industry affecting commerce.

57.     Under Section 703(c) of Title VII, it is unlawful for a labor organization to (1) exclude or expel from its membership, or otherwise to discriminate against, any individual because of his race or national origin; or (2) classify or refuse to refer for employment any individual because of his race or national origin.

58.     Local 79 violated Title VII by excluding or expelling Rios and/or refusing to refer Rios for employment because of his race or national origin, by discriminatorily challenging his documentation and immigration status.

59.     Local 79's discrimination occurred with malice and reckless disregard of Rios' rights.

60.     As a direct and proximate result of Local 79's actions, Rios suffered and continues to suffer actual damages to be determined at trial, in forms including without limitation loss of past and future income, mental anguish, and pain and suffering.

### FOURTH CAUSE OF ACTION
### (New York Human Rights Law against Local 79)

61.      Rios repeats and re-alleges each and every previous allegation as if fully set forth herein.

62.     Local 79 is a "labor organization" as defined in Section 292(3) of the New York Human Rights Law.

63.     Under Section 296(1)(c) of the New York Human Rights Law, it is unlawful for a labor organization to exclude or expel from its membership any individual because of his race or national origin.

64.     Local 79 violated the New York Human Rights Law by excluding or expelling Rios from the union because of his race or national origin, by discriminatorily challenging his documentation and immigration status.

65.     Local 79's discrimination occurred with malice and reckless disregard of Rios' rights.

66.     As a direct and proximate result of Local 79's actions, Rios suffered and continues to suffer actual damages to be determined at trial, in forms including without

limitation loss of past and future income, mental anguish, and pain and suffering.

## FIFTH CAUSE OF ACTION
### (New York City Human Rights Law against Local 79)

67.     Rios repeats and re-alleges each and every previous allegation as if fully set forth herein.

68.     Local 79 is a "labor organization" as defined in Section 8-102(3) of the New York City Human Rights Law.

69.     Under Section 8-107(c) of the New York City Human Rights Law, it is unlawful for a labor organization to exclude or expel from its membership any individual because of his race or national origin.

70.     Local 79 violated the New York City Human Rights Law by excluding or expelling Rios from the union because of his race or national origin, by discriminatorily challenging his documentation and immigration status.

71.     Local 79's discrimination occurred with malice and reckless disregard of Rios' rights.

72.     As a direct and proximate result of Local 79's actions, Rios suffered and continues to suffer actual damages to be determined at trial, in forms including without limitation loss of past and future income, mental anguish, and pain and suffering.

## SIXTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress against All Defendants)

73.     Rios repeats and re-alleges each and every previous allegation as if fully set forth herein.

74.     Defendants engaged in extreme and outrageous conduct against Rios, in the form of interfering with his employment, accosting and interrogating him at the union

office, and challenging his immigration status and threatening him with deportation.

75.     Defendants' conduct was done with the intent to cause Rios severe emotional distress.

76.     Defendants' conduct proximately caused Rios severe emotional distress.

77.     As a direct and proximate result of Defendants' actions, Rios suffered and continues to suffer actual damages to be determined at trial, including without limitation mental anguish and pain and suffering.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff demands a trial by jury and judgment against Defendants as follows:

a.   Compensatory damages in an amount to be determined at trial;

b.   Injunctive relief;

c.   Pre-judgment interest;

d.   Back pay and front pay;

e.   Punitive damages in an amount to be determined at trial; and

f.   Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just, equitable and proper.

Dated: September 26, 2016
        New York, New York                            Sullivan PC

                                             By:   _____
                                                   Peter Sullivan
                                                   7 East 20th Street
                                                   New York, New York 10003
                                                   (212) 687-5900
                                                   ps@sullivanlegal.net
                                                   *Attorneys for Plaintiff*

13